## THE ZION CHURCH OF STERLING

### *v.*

### CLARA A. MENSCH.

*Opinion filed February 17, 1899.*

1. CORPORATIONS—*incorporation of religious society vests title to trust property in the corporation.* Under section 41 of the Incorporation act (Rev. Stat. 1874, p. 292,) the incorporation of a religious society immediately vests in the corporation, in its corporate name, title to property formerly held in trust for the use of the members of the society or congregation.

2. SAME—*trustees of religious corporation may mortgage former trust property.* Title to trust property having vested in a religious so-

ciety by the act of incorporation, the trustees of the corporation may, to the extent provided by statute, mortgage the property the same as if it had been originally conveyed to the corporation.

3. MORTGAGES—*mortgagee of church property not charged with notice of secret usages.* A mortgage given by the trustees of a religious corporation, under the authority of the congregation, to secure money borrowed and used in repairing the church building, is not invalid because of an alleged usage requiring the consent of the annual conference to the mortgage, where such usage is not set out in the book of discipline or otherwise spread upon the records of the denomination.

4. SAME—*trustees of religious corporation presumed to have power to mortgage church property.* The general or annual conference of a religious denomination having authorized the election of trustees for an incorporated religious society, it will be presumed they intended such trustees to have the usual statutory power to mortgage the church property when directed by the congregation.

5. SAME—*on foreclosure equity looks to substance rather than to form.* Upon foreclosure of a mortgage upon the property of a religious corporation, given by its trustees, equity will consider evidence which shows that the intention was to bind the corporation, and not the trustees individually.

6. SAME—*mortgagee of church property not bound to take notice of theological differences between members.* One loaning money in good faith to the trustees of a religious corporation who were directed by the congregation to borrow the money, which is used on the church building, is not bound to take notice of theological differences existing among the members of the church, where the church building is controlled by an apparently well-organized congregation which worships there.

*Zion Church of Sterling* v. *Mensch,* 74 Ill. App. 115, affirmed.

APPEAL from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Whiteside county; the Hon. JOHN C. GARVER, Judge, presiding.

This is a bill filed on October 7, 1895, by the appellee, Clara A. Mensch, against the Zion Church of Sterling, Illinois, to foreclose a mortgage given by said church to secure a loan for $1000.00 made by her to it June 24, 1893.

The bill avers that the Zion Church of Sterling, Illinois, became indebted to appellee in the sum of $1000.00,

and thereupon by its trustees (naming five persons), by the authority given them under the statute, executed under their hand a promissory note for $1000.00 due in two years, with interest at six per cent per annum; that, to secure the said note, said Zion Church by its trustees, under the authority given by the statute, by a mortgage, dated June 24, 1893, conveyed to appellee the land in question, which mortgage was recorded on June 26, 1893; that said sum of $1000.00 with interest is due and unpaid; that, by the terms of the mortgage, it was provided that, in case a suit should become necessary to foreclose the mortgage, appellee should be allowed a reasonable solicitor's fee in such suit to be a further lien upon the premises; and the bill avers that, by the filing of the bill, a certain amount has become due for such solicitor's fee. The bill avers that five persons naming them are the board of trustees of the church, made such by the church in pursuance of the statute.  The bill makes, as parties defendant, the Zion Church of Sterling, Illinois, and the five trustees of the church, naming them.

The answer, not under oath, denies the indebtedness and execution of the note and mortgage by the church or any one authorized by it; and furthermore denies the power of the church to make said note and mortgage, except with the consent of what is called the Evangelical Association of North America.

Certain exceptions were filed to the answer and sustained.

After evidence heard and hearing had, the court rendered a decree on October 20, 1896, granting a foreclosure, and finding the amount due to be $1300.00 for principal and interest, and for solicitor's fees, and awarding costs against appellant.

An appeal was taken to the Appellate Court.  The Appellate Court has affirmed the decree of foreclosure entered by the trial court.  The present appeal is prosecuted from such judgment of affirmance.

RITCHIE, ESHER & WOOLLEY, for appellant.

A. A. WOLFERSPERGER, and JOHN G. MANAHAN, for appellee.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

The property, upon which the mortgage, here sought to be foreclosed, rests, was conveyed, on May 13, 1869, by one Mary Wallace to three persons, (naming them), "trustees of Zion Church of Sterling, Illinois, of the Evangelical Association of North America and their successors in office," for an expressed consideration of $400.00. The deed of May 13, 1869, recites, that the property therein named is conveyed "*in trust* that said premises shall be used, kept, maintained, disposed of as a place of divine worship for the use of the ministry and membership, and as a place of residence for the use and occupancy of the preachers, of the Evangelical Association of North America, subject to the discipline, usage and ministerial appointments of said church or association, as from time to time authorized and declared by the general conference of said association, and the annual conference in whose bounds the premises are situated."

On October 22, 1874, the church or congregation, named in the deed executed by Mary Wallace on May 13, 1869, became incorporated in accordance with sections 35, 36 and 37 of the general Incorporation act in reference to religious corporations. On the day last named, there was filed for record in the recorder's office of Whiteside county an affidavit by Christ. Eisle, subscribed and sworn to on October 21, 1874, in which said Christ. Eisle did solemnly swear that, at a meeting of the members of Zion Church, held at Sterling in the county of Whiteside and State of Illinois on the seventh day of October, A. D. 1874, for that purpose, the following persons were elected: Christ. Eisle, John Meister, Christ. Schraeder, Gottlieb Vetter,

John Yetter, trustees, according to the rules and usages of such church, and that such church adopted, as its corporate name, "The Zion Church of Sterling," and that at such meeting the affiant acted as secretary.

The appellant remained a corporate body, organized in the manner aforesaid, from October 22, 1874, up to the date of the execution of the mortgage herein sought to be foreclosed, to-wit, June 24, 1893. No objection to such organization appears to have been made by the general or annual conference of the Evangelical Association of North America.

Section 41 of the general Incorporation act provides that "upon the incorporation of any congregation, church or society, all real and personal property held by any person or trustees for the use of the members thereof, shall immediately vest in such corporation and be subject to its control, and may be used, mortgaged, sold and conveyed the same as if it had been conveyed to such corporation by deed; but no such conveyance or mortgage shall be made so as to affect or destroy the intent or effect of any grant, devise or donation that may be made to such person or trustee for the use of such congregation, church or society."

By virtue of section 41, as above quoted, the property conveyed by Mary Wallace to the trustees of Zion Church on May 13, 1869, immediately vested in such church, as a corporation, under its corporate name, "The Zion Church of Sterling." It is also true that, by virtue of said section 41, the corporation had the right to mortgage the property in question the same as though it had been conveyed to it by deed, instead of having been conveyed originally to the trustees of the church. The only restriction upon the power of the corporation to convey the mortgaged property so deeded to it is, that no such conveyance or mortgage shall be so made, as to affect or destroy the intent or effect of any grant made to a person or trustee for the use of such congregation, church or society.

The deed, executed by Mary Wallace on May 13, 1869, is claimed by the appellant to have been a grant, not for the use of the congregation, church or society known as "The Zion Church of Sterling," but for the benefit of the Evangelical Association of North America.

Section 43 of the general Incorporation act provides as follows: "The trustees shall have the care, custody and control of the real and personal property of the corporation, subject to the direction of the congregation, church or society, and may, when directed by the congregation, church or society, erect houses or buildings and improvements, and repair and alter the same, and may, when so directed, mortgage, encumber, sell and convey any real or personal estate of such corporation, and enter into all lawful contracts in the name of and in behalf of such corporation: *Provided,* that no mortgage, encumbrance, sale or conveyance shall be made of any such estate, so as to defeat or destroy the effect of any gift, grant, devise or bequest which may be made to such corporation; but all such gifts, grants, devises and bequests shall be appropriated and used as directed or intended by the person or persons making the same."

The testimony shows, that the persons, who executed the present mortgage, being the five trustees of the church, had the care, custody and control of the real estate which was mortgaged to appellee. It is claimed on the part of the appellant, that there was some disagreement between the members of the church; that some of the members of the church belonged to what is known as the "Esher faction," and other members of the church belonged to what is known as the "Dubs faction," as explained in *Schweiker* v. *Husser*, 146 Ill. 399; that the "Esherites," so-called, were decided by this court in *Schweiker* v. *Husser, supra,* to be the legal members of the Evangelical Association of North America; but that those members, who authorized the making of the mortgage here in controversy, belonged to the Dubs faction, and were,

therefore, not of the party which the courts had held to be the legal denomination. It appears from the evidence, that appellee, and her agent, who made the loan for her, had no notice of these differences in theological views among the members of the congregation. Appellee loaned her money to the trustees of this congregation to make improvements upon the church building. The church building, belonging to appellant, had been burned down in January, 1893. A small amount of insurance money was collected, and $1000.00 was borrowed from appellee. The money so borrowed and the insurance money were used in making improvements on the building, and in re-plenishing and re-furnishing the church. The loan was made by appellee and her agent in good faith, and they were not bound to take notice of theological differences existing among the members of the church, when the church building was controlled by an apparently well organized congregation which worshiped there.

Section 43 provides, that the trustees may, when directed by the congregation or church, erect houses or buildings and improvements, and repair and alter the same, and may, when so directed, mortgage any real estate of the corporation. In view of this provision of the statute, it was undoubtedly the duty of appellee to see to it, that the trustees executed the mortgage to her in pursuance of a direction to that effect, given to them by the congregation.

The proof shows, that the pastor of the church gave notice on the Sunday preceding June 4, 1893, that on the next Sunday there would be held a meeting of the congregation to determine the question, whether the trustees should be authorized to make a loan for the re-erection and improvement of the church building. In pursuance of the notice thus given, a meeting of the congregation was held on June 4, 1893. The testimony shows, that the congregation consisted of only about fifty members when all were present, and that, at the meeting held on June 4,

1893, more than one-half of the congregation were present, and that, among those present, were adherents of the Esher faction, as well as of the Dubs faction.

The minutes of the board of trustees show that, at the meeting of the congregation held on June 4, 1893, one William Haglock offered the following resolution, which, on motion, was adopted: "Resolved, that we authorize the board of trustees to make necessary loans for improvements, and give a mortgage on the church property as security." When, therefore, appellee or her agent examined the minutes of the board of trustees of the congregation, they found that the trustees were expressly authorized and directed by the congregation to make the loan in question.

This would seem to settle the validity of the mortgage here sought to be foreclosed, and the justice of the claim of the appellee to the money secured by that mortgage. But appellant claims that the mortgage, under the terms of section 43 aforesaid, could not be given upon the property, so as to defeat or destroy the effect of any grant made to the corporation. It is said by the appellant that, under the deed executed to the trustees of the church on May 13, 1869, by Mary Wallace, the trustees held the property in trust for the use of the ministry and preachers of the Evangelical Association of North America; that appellee was bound to take notice, that the property was thus held in trust for the benefit of said Evangelical Association, and not exclusively for the benefit of the particular congregation authorizing the loan, and that the mortgage was made without reference to the rights of the said association.

The particular ground, upon which appellant bases the contention that the rights of the Evangelical Association were ignored, is the alleged existence of a church usage. It is claimed, that, according to the usage thus contended for, no congregation had a right to place a mortgage upon any of its property without permission of

the annual conference of the association, within whose bounds the property was located. The statute authorizes the loan, when the congregation directs the trustees to make the loan. But, in addition to the requirement of the statute, counsel for appellant say, that appellee should have seen to it, that the annual conference of the Evangelical Association of North America had given its permission to the trustees to make the loan from her. The evidence is conflicting, as to whether or not there was any such usage as is claimed, which required the granting of permission by the annual conference before any church property could be mortgaged. The circuit court evidently found, that no such usage was established by the testimony, and we are inclined to regard the finding of the court upon this question of fact as conclusive, it not appearing that such finding is against the weight of the evidence.

It clearly appears, however, that neither appellee nor her agent had any notice or knowledge of any such usage as is here contended for. The provisions of the deed of May 13, 1869, did not contemplate a usage, which depends upon oral proof for its establishment. The language of the deed is: "Subject to the discipline, usage and ministerial appointments of said church or association, as from time to time authorized and declared by the general conference of said association, and the annual conference in whose bounds the said premises are situated." The usage here contemplated is a usage fixed and declared by the annual conference, or the general conference. The book of discipline of the Evangelical Association of North America was introduced in evidence in this case, and is set out in the record. We have been pointed to no provision in that discipline, which requires the permission of the annual conference before a loan could be made by a congregation for the improvement of church property. If any such usage had been authorized and declared by the annual conference of the denomination, there would

be a declaration of it in the established book of discipline. Indeed, parties, dealing in good faith with a congregation of this kind, cannot be required to take notice of any existing usage, which is not spread upon the records of the denomination itself. As no such usage was declared by either the general or annual conference, appellee was not bound to take notice of it. It follows, that the execution of the mortgage cannot be said to have had the effect of defeating or destroying the effect of the grant, contained in the deed of May 13, 1869. The discipline authorizes each society to elect a board of trustees every one, two or three years to consist of not less than three nor more than nine persons. It will be presumed, that the general or annual conference, having authorized the election of trustees, intended them to be such trustees as should have the usual statutory powers, among which is the power to mortgage the church property, when directed by the congregation.

The proof clearly shows, that the note and mortgage, given by the trustees, was the indebtedness of the corporation, and not of the individual trustees. This is established by the testimony, already referred to, in regard to the adoption of the resolution by the congregation, authorizing the trustees to make the loan. This is not an action at law upon the note given by the trustees, but this is a proceeding in equity to foreclose a mortgage, executed by the corporation through its trustees. Equity looks to the substance rather than the form, and will here consider the evidence which shows that the corporation was intended to be bound, and not that the trustees were intended to be bound. (*Scanlan* v. *Keith,* 102 Ill. 634; *Hypes* v. *Griffin,* 89 id. 134; *New Market Savings Bank* v. *Gillet,* 100 id. 254).

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*